102 So.2d 292 (1958)
The JACKSONVILLE BAR ASSOCIATION, Appellant,
v.
Sam B. WILSON, Individually, as a Member of The Florida Bar, etc., Appellee.
Supreme Court of Florida.
April 23, 1958.
Bedell & Bedell, Jacksonville, for appellant.
Frank T. Cannon, Jacksonville, for appellee.
Harold J. Gallagher, New York City, and Cody Fowler, Tampa, for American Bar Ass'n and J. Lewis Hall, Tallahassee, for Florida Bar, amici curiae.
HOBSON, Justice.
This is an appeal by the Jacksonville Bar Association from a final declaratory decree of Duval County Circuit Court holding that appellant's operation of a lawyer reference service, with attendant publicity and advertising, is in violation of the Code of Ethics, of the American Bar Association, rule B, § 27, 31 F.S.A., and the Integration Rule, art. 11, adopted by this court, 31 F.S.A. Briefs have been filed in behalf of the Florida Bar and the American Bar Association.
The suit leading to the decree appealed from was instituted by a member of the Florida Bar, suing for himself and as representative of a class described as "all attorneys who are not members of the Jacksonville Bar Association, a nonprofit corporation, and who are members of the Florida Bar and who are residents of Duval County, Florida."
The case was determined below upon facts "included in the pleadings and admitted on final argument" and it was stipulated that the taking of testimony would be unnecessary. The facts pertaining to the purpose and operation of the challenged service are most succinctly stated in the regulations governing the Committee on Lawyer Reference Service of the Jacksonville Bar Association, which are appended to the answer. These regulations are prefaced by the following statement:

*293 "The purpose of the Lawyer Reference Service of The Jacksonville Bar Association is to provide a method whereby any person who can afford to pay a reasonable fee for legal advice, and who does not have a lawyer, may be referred by The Jacksonville Bar Association to a lawyer willing to give a brief consulation for a fixed fee, and, where necessary, additional legal services for a reasonable fee to be agreed upon between the lawyer and the client."
The regulations go on to provide that the service shall be operated by a Referrer, who is a lawyer functioning under the supervision of a committee of the Bar Association. A prospective client is first interviewed by the Referrer who, if further legal services are required, refers the client to a member of the panel of lawyers who have indicated their willingness to serve. The regulations pertaining to the formation and operation of the panel of lawyers are reproduced verbatim, as follows:
"IV. Formation of the Panel
"1. The committee shall direct the organization of the panel, and shall accept no attorney as a member thereof unless he has filed an application in writing on the form promulgated by the committee.
"2. All members in good standing of The Florida Bar, who practice law in Duval County, Florida, may qualify for membership in the panel.
"3. In submitting his application for membership on the panel an applicant may, if he chooses to do so, list those branches of legal work in which he considers himself particularly qualified and those which he does not care to handle.
"4. By filing an application, each applicant agrees that if he is registered by the committee as a member of the panel:
"a. He will personally grant a half-hour consultation for a fee of $5.00, to any client referred to him by the Referrer.
"b. Any charge for further service will be limited to a reasonable amount agreed upon with the client and in keeping with the spirit of the Lawyer Reference Service.
"c. Any dispute which may arise in connection with the amount of his fee shall be arbitrated by the Committee on Lawyer Reference Service, whose decision in the matter will be accepted by the client and the member of the panel as controlling and final.
"d. Within one week after the termination of each referred case, he will report briefly to the Referrer, on a form furnished by the latter, concerning the disposition of the case and the fee paid by the client.
"5. Members of the panel whose applications are received before March 1, 1953, shall be placed on the panel in alphabetical order. Members of the panel whose applications are received thereafter shall be listed in alphabetical order on the day of receipt, and, as so grouped, placed at the foot of the panel as of that day.
"V. Operation of the Panel
"1. Assignment of the cases or clients shall be in alphabetical rotation among the members of the panel who have indicated that they desired references in the branch of legal practice in which the prospective client desired service, unless the client shall decline to be referred to a particular member of the panel, in which case the prospective client shall be referred to the next member of the panel who has so indicated.
"2. If the Referrer ascertains that a person being interviewed is presently represented by a lawyer he shall make *294 no reference. If the person has been previously represented by a lawyer, the Referrer shall endeavor to have such person consult the same lawyer as before.
"3. No panel member shall lose his place on the panel by reason of the inability of the Referrer to reach him by telephone to make a reference, but the next available member of the panel shall receive the reference.
"4. If the unavailability of a member of the panel results from illness or absence from the city, of an extended or indeterminate duration, the Referrer shall place that member's panel card in a temporary file, and shall notify him in writing of that fact. When the member notifies the Referrer that he is again available, his card shall be replaced in its former position on the panel.
"5. The Referrer shall establish and maintain an adequate system of records which will correctly reflect the operation of the service, and he shall make a report of all his activities to the committee at least once each month."
As will readily be observed from the regulations pertaining to the formation of the panel, the organization is in no sense exclusive, but is open to "all members in good standing of the Florida Bar, who practice law in Duval County, Florida." It should also be noted that panel members may list the branches of legal work in which they consider themselves particularly qualified and those branches which they do not care to handle. Thus the Referrer is apprised, as a prospective client would not be, of the availability of specialized legal services, and he is in a far better position to make arrangements for proper disposition of the prospective client's legal affairs than the client would be when confronted with the monolithic listing of attorneys in the telephone directory. From the record herein it appears the service is successful and has been well received by the public.
The ground upon which the circuit court found the service offensive was that its advertising constituted an unethical solicitation of legal business. The following type of advertisement has been published in Jacksonville newspapers:
"Lawyer Reference Service
"If you do not have a lawyer, contact this official agency of the
"Jacksonville Bar Association for referral to a lawyer to handle your legal matters for a reasonable fee.
 "501 Florida National Bank
 "Dial EL 3-1548"
In the Jacksonville telephone directory a similar advertisement has appeared, which reads as follows:
"Lawyer Reference Service
"If You Need a Lawyer and Do Not Know One, Contact This Official Agency of the
 "Jacksonville Bar Association
 "Room 501
 "Fla Natl Bk Bl  EL 3-1548"
The solicitation of professional employment by advertisement is condemned by Canon 27, and the stirring up of litigation by Canon 28, of the Canons of Professional Ethics of the American Bar Association, adopted by this court. We are of the opinion that neither canon has been violated by the activities of the Jacksonville Bar Association, but that, to the contrary, the plan before us was conceived and is being executed in the highest traditions of public service.
The prohibition of advertising by lawyers deserves some examination. All agree that advertising by an individual lawyer, if permitted, will detract from the dignity of the profession, but the matter goes deeper than *295 this. Perhaps the most understandable and acceptable additional reasons we have found are stated by one commentator as follows:
"1. That advertisements, unless kept within narrow limits, like any other form of solicitation, tend to stir up litigation, and such tendency is against the public interest.
"2. That if there were no restrictions on advertisements, the least capable and least honorable lawyers would be apt to publish the most extravagant and alluring material about themselves, and that the harm which would result would, in large measure, fall on the ignorant and on those least able to afford it.
"3. That the temptation would be strong to hold out as inducements for employment, assurances of success or of satisfaction to the client, which assurances could not be realized, and that the giving of such assurances would materially increase the temptation to use ill means to secure the end desired by the client.
"In other words, the reasons for the rule, and for the conclusion that it is desirable to prohibit advertising entirely, or to limit it within such narrow bounds that it will not admit of abuse, are based on the possibility and probability that this means of publicity, if permitted, will be abused." Harrison Hewitt in a comment at 15 ABAJ 116 (1929,) reproduced in Cheatham, Cases and Materials on the Legal Profession (2d Ed., 1955), p. 525.
Of course, competition is at the root of abuses in advertising. If the individual lawyer were permitted to compete with his fellows in publicity through advertising, we have no doubt that Mr. Hewitt's three points, quoted above, would accurately forecast the result.
But the advertising now before us represents the very antithesis of competition. Here is an organization of lawyers, which all in a given area may join, working cooperatively to lower the barrier between the legal profession and the public. Certainly the public must be attracted, and must be apprised of the availability of the service. We deal every day with cases wherein the client sought legal advice too late, when his affairs had reached the pathological stage and litigation could not be avoided. Counselling, or preventive legal advice before trouble commences, will tend to keep people out of the courts, within the letter and spirit of the Canons of Ethics. And alerting the public to the existence of a service, under bar sponsorship, which will provide such preventive advice at a reasonable fee is not unethical, but must redound to the benefit both of the public and of the bar.
The final declaratory decree appealed from is reversed and the cause remanded with directions to dismiss the suit.
TERRELL, C.J., and THOMAS, THORNAL and O'CONNELL, JJ., concur.