152 So.2d 723 (1963)
DADE-COMMONWEALTH TITLE INSURANCE CO., the Drummond-Blow Title Co., and National Title Insurance Company, Petitioners,
v.
NORTH DADE BAR ASSOCIATION, INC., and Joe E. Ludick, Respondents.
No. 32079.
Supreme Court of Florida.
April 19, 1963.
Rehearing Denied May 21, 1963.
*724 Sibley, Grusmark, Giblin, King & Levenson and Vincent C. Giblin, Miami Beach, for petitioners.
Snyder, Young & Stern, No. Miami Beach, and W. Barry Swope, Miami Shores, for respondents.
Wm. H. Rogers, Jacksonville, amicus curiae.
THOMAS, Justice.
This controversy had its inception in a complaint filed by North Dade Bar Association described as a corporation not for profit composed of lawyers practicing in the northern section of Dade County. The defendants were averred to be corporations engaged in business as title companies representing dealers in real estate and receiving compensation for their services "under the guise or subterfuge" that the money was received as "escrow" fees and so on. Furthermore, the defendants were alleged to be causing legal documents to be prepared by servants or agents in consummating real estate transfers and mortgages all of which activities on the part of the defendants were charged by the plaintiffs to be unlawful and unethical.
It was prayed that the court declare that such actions of the defendants amounted to practicing law and enjoin their continuance.
The chancellor held the opinion that neither a private non-profit corporation nor an individual lawyer had standing to bring such a suit and that it could be instituted only by The Florida Bar. So he dismissed the cause.
When the matter reached the District Court of Appeal it was recognized that the Supreme Court had "exclusive jurisdiction over the admission to the practice of law and the discipline of persons admitted," Sec. 23, Art. V of the Constitution, F.S.A., and the power to punish for contempt anyone indulging in the unauthorized practice of law, State of Florida ex rel. The Florida Bar v. Sperry, Fla., 140 So.2d 587, but the court thought it did not follow that such jurisdiction precluded other courts from exercising a like power. We pause here to observe that this thought does not seem to give full meaning to the word "exclusive" used in the quoted organic law.
The court then proceeded to give reasons why a local bar association or an individual lawyer might well be fitted by familiarity with the locale "to call to a court's attention *725 those who engage in the unauthorized practice of law." The court pointed to the expression in State v. Sperry, supra, that, after all, the chief concern in curbing or prohibiting the unauthorized practice is the protection of the public and continued by posing this rhetorical question: "Does a voluntary bar association or an individual lawyer have standing in court to enforce this public right?"
Then the court meticulously reviewed cases in this and other jurisdictions relevant to the question framed and concluded, as it was conceded by respondents, that there was no direct precedent to be followed but that the right of individuals and local bars to institute and maintain such suits had not been questioned, citing among other decisions Petition of Florida State Bar Association, Fla., 40 So.2d 902; Keyes Co. v. Dade County Bar Association, et al., Fla., 46 So.2d 605; Cooperman et al. v. West Coast Title Co., et al., Fla., 75 So.2d 818, and Jacksonville Bar Association v. Wilson, Fla., 102 So.2d 292.
The court also referred to a decision of the Supreme Court of West Virginia, West Virginia State Bar et al. v. Earley, 144 W. Va. 504, 109 S.E.2d 420, in which a decree granted at the behest of a statutory association and individual lawyers was affirmed.
The chancellor had leaned heavily on a decision of the Court of Appeals of Maryland in Bar Association of Montgomery Co. v. District Title Ins. Co., 224 Md. 474, 168 A.2d 395, that without statutory authority bar associations acting as private corporations could not sue to enjoin unlawful practice. The District Court of Appeal declined to follow the case, however, because it was thought to be inharmonious with decisions in this State where for many years the courts had not "questioned" the right of bar associations to maintain such suits.
The district court observed that there were cogent reasons supporting the chancellor's decision that The Florida Bar alone could bring a suit of this nature, namely, the integration rules naming The Florida Bar an official arm of the Supreme Court, which as we have written, has exclusive jurisdiction over admission to practice and discipline of those admitted, the prohibiting of practice by persons not members of The Florida Bar in good standing and the grant to the Board of Governors of The Florida Bar of the power and duty to enforce the rule. Moreover, thought the court, there would be considerable strength to the position that procedure by the one agency of the court would be more effective in accomplishing the purpose in mind than sporadic action by individuals or corporations.
Upshot of the court's opinion on this phase of the litigation was that the suit was properly brought by the respondents.
The court then proceeded to decide the second feature of the case, that is, whether or not the respondents were proper parties plaintiff since none of them had shown a damage not being suffered by the general public, it having been the argument of appellees, now petitioners, that the rule with reference to public nuisances should apply and that pursuant to it the appellants-respondents could not prevail in the absence of a showing that the injury to them was different in kind, as distinguished from degree, from that undergone by the general public. This contention is based primarily on the expression of this court in State ex rel. The Florida Bar v. Sperry, supra, that the purpose of prohibiting the practice of law by those unqualified is the protection of the public not the protection of the members of the legal profession. This afforded the foundation for the district court's succinct pronouncement that it was "the public's right to protection which [was] being asserted" in this case.
The court held the view that the rule should not be extended to cases such as the present one.
*726 When the controversy was terminated by reversal of the chancellor's decree the district court certified the question as being one of great public interest, Sec. 4(2), Art. V, so the condition precedent to our exercise of jurisdiction was met and we will decide it.
The full purpose of integrating the bar was expounded in the opinion of this court in Petition of Florida State Bar Association et al., supra. Paramount in the thorough consideration of the movement was the protection of the public by consolidation of the attorneys in one body and under one supervision. The movement was studied deliberately and unhurriedly with great care and when that decision was adopted the die was cast.
After the petition to integrate the bar was approved, in 1949, the court implemented the decision by adopting rules, governing the Integrated Bar, designed to "inculcate in its members the principles of duty and service to the public, to improve the administration of justice" and "The Florida Bar, a body created by and existing under the authority of this Court, [was] charged with the maintenance of the highest standards and obligations of the profession of law, and to that end [was] vested by this Court, in the exercise of its inherent powers over The Florida Bar as an official arm of this Court, with the necessary powers and authority." (Italics supplied.)
It is obvious to us that it was the intention and purpose of this court, as well as those who sponsored the integration movement, to place the admission of attorneys and the discipline of those admitted, all of it in this court and the plan was clinched when by the adoption of the amendment of Art. V of the Constitution in 1956 the provision we cited at the outset was included. It was stipulated in the same section that the court could provide for the handling of disciplinary matters by "commissions consisting of members of the bar to be designated by it, the supreme court, subject to its supervision and review." And that is precisely what the court has achieved by making The Florida Bar its arm for the entertainment and disposition of such matters under the court's supervision.
The petitioners pose the pertinent question whether support could be mustered for the position that corporations or individuals could prosecute some sort of proceeding to discipline a member of the bar.
We think order has been brought to the whole subject by the integration of the bar and the adoption of the integration rule, and that confusion, if not chaos, would result from independent proceedings of this sort by the 8500 lawyers and 57 bar associations now present in this State. Were we to adopt the attitude of the District Court of Appeal that although the Supreme Court has the power to prevent the unauthorized practice of law, it does not follow that the power of other courts is precluded, we think it would be necessary to ignore the word "exclusive" in the relevant Constitutional provision already quoted.
For the reasons stated we decide that the respondents were not authorized to bring the suit.
Moreover, we must disagree with the District Court's conclusion that the rule with reference to the interest that need be shown to entitle an individual to bring suit to enjoin a public nuisance is not applicable to a factual situation such as that with which we are now dealing. We discern no difference in the basic principle. We cannot accept as accurate the statement of the District Court of Appeal that since "every lawyer * * * has a special interest in the proper functioning of the judicial processes" he therefore "ought not to be barred from the privilege of calling the court's attention to those who strike at its strongest ally  a cohesive and dedicated bar." True, every upright lawyer has an interest in the fair, efficient and speedy administration of justice but it cannot be said that an injury to his sense of proper judicial administration is different in kind, *727 as distinguished from degree, from the injury to another of his status and ideals. And certainly to hold that he individually cannot sue does not mean that he is prevented from directing this Court's attention to any infraction or misdeed of another. He simply must go to the proper court so the matter may be determined by procedure in channels which have been charted long since. But in all such instances the ultimate decision shall rest in the Supreme Court.
We have endeavored to solve both problems embedded in the question certified.
It is our conclusion that the decision of the District Court of Appeal be quashed and the decree of the chancellor reinstated.
ROBERTS, C.J., and TERRELL, DREW and THORNAL, JJ., concur.