[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13951

_____

D. C. Docket No. 09-00650-CV-T-17-TBM



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2010
JOHN LEY
CLERK

DANNER CONSTRUCTION CO., INC.,
a Florida corporation,
GATEWAY ROLL-OFF SERVICES, LP,
a Nevada limited partnership,

Plaintiffs-Appellees,

versus

HILLSBOROUGH COUNTY FLORIDA,
a political subdivision of the State of Florida,

Defendant-Appellant.

REPUBLIC SERVICES OF FLORIDA, LIMITED PARTNERSHIP,
WASTE MANAGEMENT INC. OF FLORIDA,

Intervenors-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 9, 2010)

Before DUBINA, Chief Judge, MARTIN and COX, Circuit Judges.

DUBINA, Chief Judge:

Hillsborough County established a franchise system for waste collection, one now challenged under the antitrust laws by a service provider and a customer. The district court held that the franchise system implemented by the county constituted a hybrid restraint—one where the government enforces the anticompetitive practices of private parties. According to the district court, because such a hybrid restraint existed, it could not address the antitrust immunity of the state actors. The district court's conclusion was incorrect, and we reverse its order denying immunity. Even if the Sherman Act preempts a state practice, if it is undertaken by state actors pursuant to an expressed anticompetitve state policy, then those actors are immune from liability.

## I. BACKGROUND

Appellant Hillsborough County, Florida ("the county"), together with Intervenor-Appellants Waste Management, Inc. of Florida and Republic Services

2

of Florida (collectively "Appellants") appeal the district court order denying the county's motion to dismiss federal antitrust claims brought by Danner Construction Co. and Gateway Roll-Off Services, LP (collectively "Danner and Gateway") on the basis of state action immunity.

In 1983, the Florida legislature passed the Hillsborough County Solid Waste Disposal and Resource Recovery Act. 1983 Fla. Laws 166 (Chapter 83-415) ("the Act"). The Act empowered the county to take "exclusive control over the collection and disposal of solid waste" within the county. *Id.* at 169–70 (Section 4). The Act forbids any person or entity, except the county or its franchisees and licensees, to collect or dispose of solid waste within the county. *Id.*

Pursuant to the Act, the county passed an ordinance to implement its regulatory power over the area's waste disposal. *See* Hillsborough County, Fla. Ordinance 96-34 (Nov. 13, 1996) *amended by* Ordinance 97-8, Ordinance 97-11, Ordinance 03-15 ("the ordinance"). The ordinance established a two-pronged franchise system for waste disposal, one for residential customers and one for commercial customers. The county awards franchises within the service area to waste disposal services, *id.* § 3(k), and the Board of County Commissioners determines the collection charges assessed to residential customers. *Id.* § 3(i). For commercial entities, the county also awards franchises to disposal services, *id.* §

4(g), but it does not set collection rates, leaving those to negotiation between the franchisees and commercial customers. *Id.* § 4(f).

Danner, a commercial customer located within the county, and Gateway, a disposal service not awarded a franchise by the county, filed suit to enjoin continued application of the ordinance. Danner and Gateway alleged that the ordinance caused them harm by artificially inflating the cost of commercial waste disposal services and unlawfully barring service providers from competing in the market. Danner and Gateway asserted violations of the Sherman Act, 15 U.S.C. § 1 (2006) (Counts I and II) and various violations of state law (Counts III-V).

Acting pursuant to the ordinance, the county awarded three franchises to waste disposal services for the county's commercial entities. Danner and Gateway allege that the county's restriction on the size of the competitive market essentially authorizes the franchisees to collude and impose fixed prices on their customers. They argue that this arrangement gives the franchisees a degree of governmental power over their customers, who are forced to use their services, referring to it in the antitrust lexicon as a "hybrid restraint" because it allows private parties to enforce their pricing decisions with governmental authority. Additionally, they argue that the Act under which the ordinance was promulgated requires the county to impose price controls on commercial collection service. Finally, they argue that

4

the county's creation of a two-tiered pricing system—where the franchisees must charge below-market rates to residential customers and therefore must recoup their losses from commercial customers—forces the price-fixing they allege.

The county moved to dismiss the complaint's antitrust claims (Counts I and II) on the basis of state action immunity.[1] The Intervenor-Appellants are two of the three franchisees of the county that perform commercial waste disposal, and the district court permitted them to intervene after it denied the county's motion. Appellants now collectively challenge the district court order denying the motion to dismiss on the basis of state action immunity.

## II. STANDARD OF REVIEW

We review *de novo* the denial of a motion to dismiss based on state action immunity. *See Bolt v. Halifax Hosp. Med. Ctr.*, 980 F.2d 1381, 1384 (11th Cir. 1984) (applying *de novo* review to legal question of state action immunity).

---

[1] The county actually moved to dismiss the entire complaint, but the district court order addressed only the federal antitrust claims and ordered the county to answer the remainder of the complaint. On appeal, we address only the decision respecting the federal antitrust claims. We have jurisdiction to hear this appeal under the collateral order doctrine because the immunity asserted here includes immunity from suit. *See* 28 U.S.C. §§ 1291, 1292 (2006); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S. Ct. 1221, 1225–26 (1949) (establishing three-part test for collateral orders excepted from the final judgment requirement for appealability); *Martin v. Mem'l Hosp. at Gulfport*, 86 F.3d 1391, 1394–97 (5th Cir. 1996) (explaining that orders denying claims of state action immunity are immediately appealable under *Cohen*); *Commuter Transp. Sys., Inc. v. Hillsborough County Aviation Auth.*, 801 F.2d 1286, 1289–90 (11th Cir. 1986) (holding that an order denying summary judgment on state action immunity grounds was immediately appealable).

## III. DISCUSSION

The first key principle governing this dispute is that the antitrust laws were not intended to apply to actions taken by state governments. *See Parker v. Brown*, 317 U.S. 341, 350–51, 63 S. Ct. 307, 313 (1943). In *Parker*, the Supreme Court established a general immunity from antitrust liability for state governmental actors acting pursuant to state law, a concept now often denominated "*Parker* immunity" or "state action immunity." *See id.* In a later case involving California's effort to enforce resale price maintenance, the Supreme Court developed a two-part test for state action immunity. *See Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S. Ct. 937 (1980). "First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; second, the policy must be actively supervised by the State itself." *Id.* at 105, 100 S. Ct. at 943 (internal quotation marks omitted) (ultimately holding that the state did not adequately supervise the private pricing decisions that it enforced).

The second key principle is that we need apply the two-part *Midcal* test only when the state statute or ordinance is preempted by the federal antitrust laws. *See Rice v. Norman Williams Co.*, 458 U.S. 654, 662 n.9, 102 S. Ct. 3294, 3301 n.9 (1982). Challenges to state action not preempted by the Sherman Act fail. *See*

6

*Fisher v. City of Berkeley, Cal.*, 574 U.S. 260, 270, 106 S. Ct. 1045, 1051 (1986) (holding that ordinance was not a *per se* violation of the Sherman Act and concluding that "[w]e need not address whether . . . [it] would be exempt under the state-action doctrine from antitrust scrutiny"). Preemption occurs only if there is an "irreconcilable conflict" between the state statute and the antitrust laws:

> Our decisions in this area instruct us, therefore, that a state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute.

*Rice*, 458 U.S. at 659, 661, 102 S. Ct. at 3299–3300.

Whether state regulation is preempted depends largely on the character of the regulation. If the state acts unilaterally, such as by imposing rent controls, such action cannot be preempted by the antitrust laws and the antitrust challenge fails. *Fisher*, 475 U.S. at 270, 106 S. Ct. at 1051 (holding that city's rent control ordinance was not an unlawful price-fixing scheme because the city acted unilaterally). If, however, the state empowers a private actor to violate the antitrust laws, by, for example, imposing price controls on downstream distributors, then the state has created a "hybrid restraint" that is preempted if it constitutes a *per se* violation of the antitrust laws. *Id.* at 267–68, 106 S. Ct. at 1050; *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 342–43, 107 S. Ct. 720, 724–25 (1987) (holding that New

7

York's resale price maintenance scheme for liquor was preempted by the Sherman Act).

The third and final key principle relates only to applying state action immunity to *municipal ordinances* that *are preempted* by the antitrust laws. The Supreme Court substantially clarified and revised the two-pronged *Midcal* test as it applies to municipal ordinances in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S. Ct. 1713 (1985). First, though the first prong requires a clearly articulated and affirmatively expressed state policy of antitrust immunity for the municipality, the prong is satisfied when anticompetitive conduct is a "foreseeable result" of the state's authorizing statute. *Id.* at 42, 105 S. Ct. at 1718. Explicit statements by the state legislature that it anticipated anticompetitive effects are not required. *Id.* Second, the final prong, requiring active state supervision of the regulatory scheme, is not required when the defendant is itself a municipality and not a private actor. *Id.* at 46–47, 105 S. Ct. at 1720.

A municipality is shielded from antitrust liability if its activity is undertaken "pursuant to a clearly expressed state policy" authorizing anticompetitive conduct. *Town of Hallie*, 471 U.S. at 40–41, 105 S. Ct. at 1717. A state policy is "clearly expressed" when the state statute authorizing anticompetitive conduct "clearly contemplates" such a result, or where the "anticompetitive effects logically would

8

result." *Id.* at 42, 105 S. Ct. at 1718. In this circuit, an entity seeking state action immunity must show: "(1) that it is a political subdivision of the state; (2) that, through statutes, the state generally authorizes the political subdivision to perform the challenged action; and (3) that, through statutes, the state has clearly articulated a state policy authorizing anticompetitive conduct." *Fed. Trade Comm'n v. Hosp. Bd. of Dirs. of Lee County*, 38 F.3d 1184, 1187–88 (11th Cir. 1994).

We assume, without deciding, that the challenged ordinance is preempted by the Sherman Act.[2] Even so, the county has demonstrated that all three criteria of the state action immunity test are satisfied. There is no dispute that the county is a political subdivision of the state. The parties tussle over the second and third criteria, which are really just an extrapolation of the "clearly expressed state policy requirement" contained in *Town of Hallie*. An examination of the Hillsborough County Solid Waste Disposal and Resource Recovery Act, 1983 Fla. Laws 166, resolves both questions in the county's favor.

The Act explicitly provides that "the county shall have exclusive control

---

[2] Neither in the complaint, in brief, nor at oral argument did Danner and Gateway's counsel clarify whether their challenge to the ordinance was facial or as-applied. Regardless of whether the statute is challenged on its face or in its application, our review of the state action immunity question is the same. IA Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 221a (3d ed. 2006) ("In both [facial and as-applied] cases, once the inconsistency sufficient to warrant prima facie preemption is found, the statute or practice survives the test only if these additional requirements are met . . . ."). To reach the immunity question in this interlocutory appeal, we will assume that the Sherman Act preempts both the statute on its face and the county's application of the ordinance.

over the collection and disposal of solid waste." *Id.* at 169–70 (Section 4). It further provides that "[n]o person except the county, its franchisee, licensee, leasee [sic], or other designated person shall . . . engage in the collection and disposition of solid waste." *Id.* Such language confers on the county the right to exert control over the solid waste collection and to limit or exclude private competitors from the market.

The final prong of this circuit's state action immunity test turns on the presence of a clearly articulated policy permitting anticompetitive conduct. In general, this court has held that when the state confers on a municipality the power to regulate the provision of public services, it does so mindful of the inevitable anticompetitive effects such power will have. *See, e.g.*, *McCallum v. City of Athens, Ga.*, 976 F.2d 649, 654 (11th Cir. 1992) (holding that state action immunity shielded city from antitrust claims stemming from its exclusive operation of waterworks, as authorized by statute). The provisions of section 4 of the Act, as discussed above, show that the state intentionally conferred upon the county exclusive power to administer and regulate waste collection. That anticompetitive results were foreseeable is a given—such a grant of exclusivity implies anticompetitive purpose. *See Commuter Transp. Sys., Inc. v. Hillsborough County Aviation Auth.*, 801 F.2d 1286, 1290 (11th Cir. 1986) (applying state action

immunity to claims against state agency that regulated the number of limousine operators that could service the local airport pursuant to its authority to develop and administer public airports).

An additional indication that the legislature foresaw the anticompetitive effects of ordinances promulgated under the Act appears in section 19. In that section, the legislature specifically exempted from application of the Florida Antitrust Act the exercise of powers under the Act. 1983 Fla. Laws 176. This serves as another indication that the state legislature was imminently aware of the anticompetitive results that would flow from the exclusivity arrangement.

Danner and Gateway repeatedly assert that the county ordinance and its application are not saved by state action immunity because they do not comply with the Act's terms. Specifically, they argue that the Act requires the county, when implementing a franchise system, to establish rate controls on the commercial collection services. They contend that the county's failure to establish rate controls prevents state action immunity from shielding the county because no state law allows the county to enact incomplete or uncompliant regulations.

Danner and Gateway's general legal assertion—that a challenged ordinance must comply with state law in order to be shielded by that law—has great logical appeal. The problem they face is not the legal concept, however, but the

11

application of that concept to the case at hand. Simply put, Danner and Gateway's interpretation of the Act, and their contention that it requires the county to set the rates for collection services, is inaccurate.

Danner and Gateway repeatedly point to two provisions of the Act that they claim require the county to set rates for commercial collection: sections 5(8) and 8. *See* 1983 Fla. Laws 172–74. Both of these sections speak specifically to "solid waste disposal and resource recovery system[s]," a term defined under the Act dealing with the "facilities" used to store and convert solid waste, such as landfills. 1983 Fla. Laws 168 (Section 2(8)). These sections do clearly establish the county's authority to regulate rates charged by these "facilities," but nowhere do they speak of the county's obligation to set rates for those who collect and take the waste to these facilities. Because there is no actual provision of the Act which requires the county to set rates for the collection of waste, the contention that the ordinance fails to comply with the state authorization is erroneous.[3]

The crux of the district court's decision was this: "the County has engaged in a 'hybrid restraint' on trade, as alleged by Danner, [and] the County has committed a per se violation of the Sherman Act and is not entitled to immunity under the

---

[3] Danner and Gateway also argue that the ordinance conflicts with other provisions of state law not related to the enabling statute. For our purposes, the fact that a local ordinance may conflict with a different state law may present a state law cause of action, but the noncompliance does not rise to the level of a federal antitrust violation.

12

*Parker* doctrine." As the framework discussed above reveals, this conclusion was legal error; even if the Sherman Act preempts a state law or municipal ordinance, the court must still conduct the *Parker/Midcal* inquiry to determine if the defendant is entitled to immunity. *See Midcal*, 445 U.S. at 103, 100 S. Ct. at 942 (holding that the challenged practice violated the Sherman Act but continuing to examine it under *Parker*); *Fisher*, 475 U.S. at 265, 106 S. Ct. at 1048 ("Legislation that would otherwise be pre-empted under *Rice* may nonetheless survive if it is found to be state action immune from antitrust scrutiny under *Parker* . . . ."). Our analysis of the applicability of state action immunity shows that the county is immune from this suit even if its actions are preempted by the Sherman Act.

Even the district court, in spite of its faulty application of the state action immunity framework, acknowledged that *Parker* state action immunity should shield the county's conduct under the ordinance. The authorizing state legislation contemplated, and most likely intended, the anticompetitive effects that resulted when the county promulgated its ordinance. The ordinance complies with the authorizing statute, which allows the county to take exclusive control of waste collection. Because the county has acted pursuant to a clearly articulated anticompetitive policy of the state, we conclude that its actions are immune from antitrust liability.

## IV. CONCLUSION

This antitrust challenge to a traditional area of state and municipal regulation fails because of the applicability of state action immunity. The county, acting in its authorized capacity as regulator of waste collection services, is immune from antitrust liability as a state actor. None of the federal antitrust claims now on appeal can stand against the county, and the district court should have ordered dismissal. We reverse the district court order denying dismissal of Counts I and II and remand for further proceedings regarding the remaining counts.

**REVERSED AND REMANDED.**

MARTIN, Circuit Judge, concurring:

I concur in the majority's analysis of the state action immunity issue but write separately to elaborate on its assumption that the challenged ordinance is preempted by Section 1 of the Sherman Act. See Slip. Op. at 9.

The majority's discussion of the "second key principle" suggests that preemption may be found only when the challenged statute or ordinance conflicts with Section 1 *on its face*. Slip. Op. at 7 (citing Rice v. Norman Williams Co., 458 U.S. 654, 661, 102 S. Ct. 3294, 3300 (1982)). As the Supreme Court stated in Rice, this occurs when the "conduct contemplated by the statute is *in all cases a per se violation*." Rice, 458 U.S. at 661, 102 S. Ct. at 3300 (emphasis added in part). If in at least one case, the conduct must be analyzed under the rule of reason, the law, in the abstract, does not conflict with Section 1. Id.

But federal preemption may also be found when a plaintiff challenges particular applications of a state or local law. Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, ¶ 217d & n.93, at 372–73, ¶ 221, at 42 (3rd ed. 2006). Such an "as applied" challenge asks whether a particular application of the law conflicts with Section 1 in that it results in a restraint of trade that is either per se illegal *or* illegal under the rule of reason. The two-part Midcal test for state action immunity thus applies not only to a law that conflicts with Section 1 on its face, as

15

the majority suggests, but also to a law that conflicts with Section 1 only in its application.[1]  Id.

As the majority correctly notes, we need not consider whether state action immunity applies unless the statute or ordinance conflicts with the Sherman Act. Slip. Op. at 2603–04 & n.2.  Thus, with respect to facial challenges, there is no need to engage in the immunity inquiry if the challenged statute or ordinance does not result in a per se illegal restraint of trade *in all cases*.  Rice, 458 U.S. at 662 n.9, 102 S. Ct. at 3301 n.9.  This is true because absent such a finding a facial challenge fails as a matter of law.  See id. at 661–62 & n.9, 102 S. Ct. at 3300 & n.9 ("Analysis under the rule of reason requires an examination of the circumstances underlying a particular economic practice, and therefore does not lend itself to a conclusion that a statute is facially inconsistent with federal antitrust laws.").

But the same is not true when the plaintiff brings an "as applied" challenge. This is because the success of an "as applied" challenge does not turn on a finding that *all* applications of the challenged law would be per se illegal.  Thus, we must

_____

[1]For a conflict to exist, of course, the conduct contemplated by the statute or ordinance must also constitute a "hybrid" rather than a "unilateral" restraint.  Fisher v. City of Berkeley, 475 U.S. 260, 266–69, 106 S. Ct. 1045, 1049–50 (1986); see also 324 Liquor Corp. v. Duffy, 479 U.S. 335, 345 n.8, 107 S. Ct. 720, 726 n.8 (1987).  This is so because a unilateral restraint cannot conflict with Section 1 in light of the fact that it lacks the necessary element of concerted action. Fisher, 475 U.S. at 266–69, 106 S. Ct. at 1049–50.

16

go further and ask whether the challenged statute or ordinance, as it is applied to the plaintiff, results in a restraint of trade that is either per se illegal or unlawful under the rule of reason. Only if we answer that question affirmatively does it become necessary to consider whether state action immunity applies.

The majority is correct that we may assume without deciding that the county's ordinance conflicts with Section 1.[2] The majority is also correct in noting that Danner and Gateway have been less than clear in describing their challenge to the county's ordinance as facial, "as applied," or both.[3] To the extent they bring a facial challenge, I therefore assume that the challenged conduct constitutes (1) a hybrid restraint that is (2) a per se violation of Section 1 *in all cases*. Insofar as plaintiffs are making an "as applied" challenge, I assume that the challenged conduct constitutes (1) a hybrid restraint that is (2) either per se illegal or unlawful under the rule of reason. In either case, the majority correctly holds that state action immunity applies. I therefore concur in the majority's state action analysis

[2]This is typical because resolution of the state action immunity issue may avoid the sometimes-thorny question of whether the conduct contemplated by the statute or ordinance falls within a category of restraints that are per se illegal, or failing that, having to undertake the fact-intensive inquiry required by the rule of reason.

[3]At oral argument, Danner and Gateway declined to label their challenge. I read their complaint, however, as only a challenge to how the county has applied the ordinance. On its face, the ordinance does not limit the number of exclusive franchisees. The county could therefore grant franchises to all players in the marketplace, including Gateway. Neither does the ordinance mandate or provide a formula by which the county must set residential rates. The ordinance therefore does not require the county to set the "below market" residential rates that allegedly force the franchisees to collude on the commercial side of their businesses.

17

and its conclusion that Danner and Gateway's antitrust claims must be dismissed.