[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15890
Non-Argument Calendar

_____

D.C. Docket No. 9:16-cv-80681-BB

ANTHONY E. RAMOS,

                                              Plaintiff-Appellant,

versus

JOHN R. TOMASINO,
Clerk of Court Office of the Clerk of
Court of the Supreme Court of Florida,
RICHARD LISS,
JOHN F. HARKNESS, JR.,
BARBARA PARIENTE, et al.,

                                              Defendants-Appellees,

THOMAS D. HALL,

                                              Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 7, 2017)

Before MARCUS, JORDAN and ROSENBAUM, Circuit Judges.

MARCUS, Circuit Judge:

Anthony Eladio Ramos, a disbarred Florida attorney proceeding pro se, appeals the dismissal of his antitrust case alleging violations of the Sherman Act, 15 U.S.C. § 1 et seq. Ramos brought suit against: (1) the Florida Supreme Court, the Office of the Clerk of the Florida Supreme Court (the "Office of the Clerk"), a Florida Supreme Court justice, and the current and former Clerks of the Florida Supreme Court (collectively the "Florida Supreme Court"); (2) the Florida Bar and three individual employees (collectively the "Florida Bar"); and (3) the Florida Board of Bar Examiners (the "Board of Bar Examiners"). In the complaint, Ramos alleged that the defendants conspired to violate the Sherman Act in connection with his Florida Bar disciplinary proceedings, which ended before he filed this case and before he decided to become licensed to practice law in the State of New York and the District of Columbia ("D.C."). In order to apply to those jurisdictions in 2014, Ramos requested a certified copy of records from his Florida Bar disciplinary proceedings from the Office of the Clerk, who responded that the records had been destroyed "in accordance with approved destruction schedules." Ramos alleged that because he was "unable to certify either his identity or status" with the Florida Bar, he had to withdraw his applications from New York and D.C.

2

Ramos's complaint included four counts, all of which were dismissed by the district court. Counts 1 and 2 alleged Sherman Act violations by the individual defendants and the "Institutional Defendants," respectively, claiming they conspired to monopolize the attorney admissions process and to deny him the ability to practice law by destroying his records. Count 3 sought to enjoin the Florida Supreme Court to enter an order stating that Ramos had been a member in good standing before the court since 1981 and to remove all internet and other references to his ineligibility to practice. Count 4 sought to enjoin the court from disseminating any information other than the judgment requested in Count 3.

On appeal, Ramos argues, inter alia, that the district court erred in dismissing his case based on the Rooker-Feldman doctrine[1] and on immunity grounds. After careful review, we affirm in part and remand in part.

Application of the Rooker-Feldman doctrine is a threshold jurisdictional matter that we review de novo. Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009); Narey v. Dean, 32 F.3d 1521, 1523 (11th Cir. 1994). We also review a district court's application of immunity de novo. Danner Const. Co. v. Hillsborough Cty., 608 F.3d 809, 812-13 (11th Cir. 2010). We may affirm the judgment of the district court on any ground supported by the record, even if the

---

[1] The doctrine is derived from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

district court did not rely on it.  Kernel Records Oy v. Mosley, 694 F.3d 1294, 1309 (11th Cir. 2012).

First, we conclude that the district court did not err in dismissing on Rooker-Feldman grounds the counts of Ramos's complaint that challenge the results of his Florida Bar proceedings.  The Rooker-Feldman doctrine precludes lower federal courts "from exercising appellate jurisdiction over final state-court judgments." Nicholson v. Shafe, 558 F.3d 1266, 1268 (11th Cir. 2009) (quotation omitted). The Supreme Court has indicated that the doctrine should be confined only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Id. (quotation omitted); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005).  In other words, the doctrine bars the losing party "from seeking what in substance would be appellate review of" the state court's judgment.  Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1330 (11th Cir. 2010).

We have specifically applied Rooker-Feldman to claims against the Florida Supreme Court for refusing to grant admission to the bar.  Uberoi v. Supreme Court of Fla., 819 F.3d 1311, 1313 (11th Cir. 2016).  There, the plaintiff sought to enjoin the Florida Supreme Court from refusing to grant her bar application, a

4

request we said was clearly a challenge to a state court judicial proceeding resulting in the denial of her application.  Id.

Here, the district court correctly concluded that it lacked jurisdiction under the Rooker-Feldman doctrine to hear the portion of Ramos's claims concerning his Florida state disbarment proceedings.  The Florida Supreme Court conclusively resolved Ramos's disbarment prior to the filing of this action, and since then, has sanctioned Ramos for submitting numerous additional filings long after his case was finalized.  See Fla. Bd. of Bar Examiners ex rel. Ramos, 17 So. 3d 268, 269, 271 (Fla. 2009) (prohibiting Ramos from making further filings without the assistance of a licensed Florida attorney due to the volume and frivolity of Ramos's post-disbarment and post-petition-for-reinstatement filings); Fla. Bar v. Ramos, 717 So. 2d 540 (Fla. 1998) (case nos. 91,562 and 91,564) (table); Fla. Bar v. Ramos, 703 So. 2d 478 (Fla. 1997) (table).  In part, Counts 3 and 4 of Ramos's complaint sought injunctive relief requiring the appellees to certify that he has been a bar member in good standing since 1981.  This relief would nullify his state court proceedings concluding otherwise, which ended well before Ramos filed this lawsuit.  As a result, the district court properly concluded that it lacked jurisdiction over these counts.

However, the Rooker-Feldman doctrine applies only to state judicial decisions, not state administrative decisions.  See Feldman, 460 U.S. at 486

("United States District Courts . . . have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case. They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."); Narey, 32 F.3d at 1525-26 (holding that federal courts have jurisdiction to entertain challenges to unreviewed state administrative agency decisions); Staley v. Ledbetter, 837 F.2d 1016, 1017-18 (11th Cir. 1988) (holding that a district court lacked jurisdiction to review a county agency's decision that had been upheld by the state court of appeals). In Uberoi, we held that the Rooker-Feldman doctrine does not deprive the district courts of subject matter jurisdiction over "general challenges to state bar rules" like Uberoi's due process claim. Uberoi, 819 F.3d at 1313 (quotation omitted).

Ramos seeks, in Counts 1 and 2, damages for the destruction of records related to his bar proceedings, and in part of Counts 3 and 4, injunctive relief barring the appellees from making any references or disseminating any information suggesting that Ramos has not been a member in good standing since 1981. Because these challenges involve state administrative rules or practices concerning the destruction of records and the dissemination of bar status information, we

cannot say that the district court lacked jurisdiction under Rooker-Feldman to hear these claims. See id. Thus, these claims should not have been dismissed on Rooker-Feldman grounds.

But even if the district court had jurisdiction over these claims, his pursuit of those remaining claims is nonetheless barred by state action immunity. The Sherman Act is a federal antitrust law enacted in 1890 to prohibit combinations and conspiracies in restraint of trade (Section 1), and to regulate monopolies (Section 2). 15 U.S.C. §§ 1-2. In Parker v. Brown, 317 U.S. 341 (1943), the Supreme Court established a general immunity from antitrust liability for state entities and officials acting pursuant to state law, a concept known as "Parker immunity" or "state action immunity." Danner, 608 F.3d at 812-13. The Supreme Court has applied Parker immunity to state supreme courts acting in a lawmaking capacity. Hoover v. Ronwin, 466 U.S. 558, 568 (1984). Hoover addressed Parker's application to the challenged conduct of four members of Arizona's bar admissions committee. Id. at 560, 571-72. Under the Arizona Constitution, the Arizona Supreme Court had plenary authority to regulate bar admissions, and in an exercise of that authority, it created the admissions committee to carry out certain responsibilities. Id. at 561-62. It reserved, however, the ultimate authority to grant or deny admission. Id.

Hoover squarely held that Parker immunity barred the Sherman Act claims at issue in that case. Id. at 581-82. In so holding, the Supreme Court focused on "the incontrovertible fact that under the law of Arizona only the State Supreme Court had authority to admit or deny admission to practice law." Id. at 581. While the Sherman Act claims involved the committee and its actions, they were really claims against the state. Id. at 572-73. Notably, the Supreme Court declined to apply the test for antitrust immunity articulated in Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97 (1980), which requires the challenged restraint to be clearly articulated and affirmatively expressed as state policy, and the policy to be actively supervised by the state itself, id. at 106. Hoover said Midcal only applied when private actors sought Parker immunity for their conduct. 466 U.S. at 568-69. Where the conduct at issue is in fact that of the state, the inquiry stops, and Midcal need not be addressed. Id.

In Hoover, the Supreme Court also rejected the argument that Parker immunity only applies if "the sovereign acted wisely after full disclosure from its subordinate officers." Id. at 574. The sole requirement, instead, "is that the action be that of 'the State acting as a sovereign.'" Id. (quoting Bates v. State Bar of Ariz., 433 U.S. 350, 360 (1977) (applying Parker immunity to the disciplinary actions of the State Bar of Arizona, under rules expressly adopted by the Arizona Supreme Court, concerning the advertisement of legal services)).

We've applied <u>Parker</u> immunity to the actions of the Alabama State Bar in disciplining attorneys for violations of advertising rules. <u>Foley v. Ala. State Bar</u>, 648 F.2d 355, 358-59 (5th Cir. Unit B June 1981).[2] There, we noted that the case was "not appreciably distinguishable from <u>Bates</u>," because the disciplinary rules of the Alabama State Bar were effectively the rules of the Supreme Court of Alabama. <u>Id</u>. at 359. Moreover, the Alabama State Bar was a component of the judiciary and subject to the supervision of the Alabama Supreme Court. <u>Id</u>. Since the challenged actions were those of the State of Alabama, <u>Parker</u> prohibited the claims under the Sherman Act. <u>Id</u>. We also applied <u>Parker</u> to the claims against the president and general counsel of the Alabama State Bar, noting that the <u>Parker</u> "shield of immunity, of course, is not limited to governmental agencies alone but extends as well to officers or agents of the State." <u>Id</u>. (quotation omitted).

The Florida Supreme Court has "exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." Fla. Const. art. V, § 15. The Florida Rules of Bar Admissions, which are reviewed and promulgated by the Florida Supreme Court, provide that the "Florida Board of Bar Examiners is an administrative agency of the Supreme Court of Florida created by the court to implement the rules relating to bar admission." Fla. Bar Admiss. R.

---

[2] <u>See</u> <u>Stein v. Reynolds Sec., Inc.</u>, 667 F.2d 33, 34 (11th Cir. 1982) (adopting as binding all decisions issued by a Unit B panel of the former Fifth Circuit).

1-12, 1-13.  Thus, under Florida law, the Board is an arm of and solely answerable to that court.  In re Fla. Bd. of Bar Examiners, 353 So. 2d 98, 100 (Fla. 1977).

Similarly, the Florida Bar is "an official arm of [the Florida Supreme] Court," acting at all times under the supervision and control of the Court.  Dade-Commonwealth Title Ins. Co. v. N. Dade Bar Ass'n, 152 So. 2d 723, 726 (Fla. 1963).  The Rules Regulating the Florida Bar provide that the Florida Bar is subject to the authority, continued direction, and supervision of the Florida Supreme Court.  R. Reg. Fla. Bar. 2-3.2(a).  Further, the Florida Supreme Court has the authority "to prescribe standards of conduct for lawyers, to determine what constitutes grounds for discipline of lawyers, to discipline for cause attorneys admitted to practice law in Florida, and to revoke the license of every lawyer whose unfitness to practice law has been duly established."  R. Reg. Fla. Bar. 3-1.2.  Florida rules of judicial administration specifically permit court records related to cases "disposed of by order involving individuals licensed or regulated by the court" to be destroyed after 10 years.  Fla. R. Jud. Admin. 2.430(c)(3)(B).

Here, the remaining counts of Ramos's complaint are barred by Parker immunity, which gives state entities and officials acting pursuant to state law immunity from antitrust liability.  Counts 1 and 2 expressly style themselves as alleging violations of the Sherman Act, and claim that the defendants conspired to monopolize the attorney admissions process and deny him the ability to practice

law by destroying his records.  Counts 3 and 4 were not expressly labeled as Sherman Act violations, but they both repeated allegations regarding the destruction of records, they both alleged that the defendants held a monopoly over the records and his ability to gain admission to practice law, and they both cite the Parker immunity doctrine, which arises only in the antitrust context.  Because these counts seek relief based on the same allegations of antitrust violations, they are all barred by Parker.

Indeed, just as in Hoover, where the challenged actions were those of the state supreme court, Ramos's counts are, in effect, against the Supreme Court of Florida.  Hoover, 466 U.S. at 573.  Like the Arizona constitution in Hoover, the Florida constitution expressly grants the Florida Supreme Court the authority to regulate bar admissions.  See id. at 562; Fla. Const. art. V, § 15.  Similarly, like the bar admissions committee in Hoover, both the Florida Bar and the Board of Bar Examiners were created by the Florida Supreme Court, and both are subject to the direct control and supervision of that court.  Hoover, 466 U.S. at 562-64; Fla. Bd. of Bar Examiners, 353 So. 2d at 100; Dade-Commonwealth, 152 So. 2d at 726.  Because the Florida Supreme Court retains plenary authority over the actions of the Florida Bar and the Board of Bar Examiners, it retains the ultimate power to make admissions and disciplinary decisions.  Compare with Goldfarb v. Va. State Bar, 421 U.S. 773, 776, 791-92 (1975) (declining to apply Parker immunity to

11

claims against a private Virginia county bar association that was "prompted," but not compelled, by the Virginia Supreme Court to adopt certain fee schedules for legal services). Parker immunity applies not only to the entity defendants, but also to the individual defendants who were acting as officers of those agencies. Foley, 648 F.2d at 359. And because the conduct at issue was in fact that of the State of Florida, the Midcal test does not apply in this case. Hoover, 466 U.S. at 568-69.[3]

Finally, the records in Ramos's disbarment cases were properly destroyed pursuant to the Florida Rules of Judicial Administration, which specifically allow for the destruction of records related to cases disposed without opinion after 10 years. Fla. R. Jud. Admin. 2.430(c)(3)(B). But even if the destruction of records somehow violated that rule, Parker immunity has never required a sovereign to act "wisely after full disclosure from its subordinate officers." Id. Hoover specifically indicates that the "only requirement is that the action be that of the State acting as a sovereign," 466 U.S. at 574 (quotation omitted), which this clearly is.

In short, the Parker immunity doctrine serves as a bar to Counts 1 and 2 and the portions of Counts 3 and 4 seeking to enjoin the appellees from making any references or disseminating any information suggesting that Ramos has not been a member in good standing since 1981. The district court did not err in dismissing

---

[3]    Similarly, Ramos misapprehends Midcal in arguing that it prevents the application of the Rooker-Feldman doctrine. Midcal was confined to Parker immunity from Sherman Act claims and did not involve federal district court review of a state court decision. See generally Midcal, 445 U.S. 97.

these claims for failure to state a claim.  See Hoover, 466 U.S. at 565-67 (holding that state-action immunity can be decided on a Rule 12(b)(6) motion to dismiss). Moreover, the portions of Counts 3 and 4 of Ramos's complaint seeking to enjoin the appellees to certify that he has been a bar member in good standing since 1981 were properly dismissed on Rooker-Feldman grounds.    However, a Rooker-Feldman dismissal is a dismissal for lack of subject matter jurisdiction, and "[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008); see also Boda v. United States, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983) (dismissal on subject matter jurisdiction grounds "is without prejudice").  We therefore affirm the dismissal of these portions of Counts 3 and 4, but remand with instructions that the district court reenter its dismissal as to these portions as one without prejudice.  We affirm in all other respects.[4]

**AFFIRMED IN PART, REMANDED IN PART**.

---

[4]    Because all of Ramos's claims were barred on Rooker-Feldman and Parker immunity grounds, we decline to address Ramos's additional arguments concerning Eleventh Amendment immunity, and those arguments that do not involve the application of immunity.  See Kernel Records Oy, 694 F.3d at 1309; see also McClendon v. Ga. Dep't of Cmty. Health, 261 F.3d 1252, 1259 (11th Cir. 2001) ("[A]voiding Eleventh Amendment questions where there are other dispositive issues . . . permits courts to avoid squandering judicial resources." (quotation omitted)).